### STREMMEL v LYNCH

Ohio Appeals, 2nd Dist, Montgomery Co

No 1201. Decided Feb 8, 1934

Milton C. Shank, Dayton, for plaintiff in error.

Virgil Schaeffer, Dayton, for defendant in error.

## OPINION

By HORNBECK, PJ.

The parties stood in the same relation in the trial court as here.

Plaintiff secured a verdict against defendant for damages for personal injuries in the sum of $400.00 and costs. Plaintiff filed a motion for new trial, which was overruled and judgment entered on the verdict. From this judgment error is prosecuted.

Plaintiff's counsel in their brief urged four claims, namely: (1) Misconduct of juror, Stewart, foreman of the jury, in talking with a Mr. Haverick, agent of the Buckeye Casualty Company, insurer of defendant, during the progress of the case. (2) Misconduct of counsel for defendant in argument to the jury in stating in substance that no beauty parlor business was producing any income. (3) That the court prejudiced the rights of the plaintiff when, during the selection of jurors, upon inquiry of a juror if he knew William G. Pickrel of the firm representing defendant, upon answering in the negative the trial court made observation: "Such is fame;" and (4) That the verdict of the jury is contrary to and manifestly against the weight of the evidence.

Respecting the claim of misconduct of the juror, it would be necessary, in order to reverse because of this misconduct of the juror, to assume that the conversation which he had with the agent of the insur-ance company was related to the case or had for its purpose an interference with the juror in the performance of his duties. We would not be justified in drawing this inference. Such conduct as is implied in the brief of plaintiff should not be condoned and counsel had the opportunity to call the attention of the trial court to the occurrence and could have requested that Mr. Haverick be called and interrogated to determine what the subject matter of the conversation between him and juror was. We are quite sure that the trial judge would have assisted in this procedure and if anything had developed which in the slightest degree suggested a tampering with a juror in his court he would promptly have granted a new trial and punished the offender. On the record as it comes to us there is not enough to justify us in saying that the occurrence set forth was prejudicial to the rights of the plaintiff.

We are content without discussion to say that no error prejudicial to the plaintiff appears upon either the second or third claims.

The substantial question in this case is whether or not the fourth claim appears, namely, that the verdict was manifestly against the weight of the evidence. We have read the record with care. Counsel makes a strong presentation for the claim that the verdict is grossly inadequate. If we were fixing the amount of the damages upon original hearing we would award the plaintiff considerably more than $400.00. But we are not passing upon this record as triers of the fact but to determine whether or not the finding of the jury, conceding its right to resolve the testimony in its most favorable light for the defendant, was so contrary to the probative effect of the evidence as to shock the conscience of a reviewing court.

The experts in this case could not, from the X-rays, say that the plaintiff was in any serious physical condition. The doctor whose testimony was most favorable to the plaintiff, Dr. E. M. Huston, was asked this question, page 133 of the record:

"Q. What is your opinion after seeing all these X-rays?

A. My opinion is there is nothing can be shown by the X-ray. There is no injury to the spine. No injury to the bone. If there is an injury it must have been to the soft part."

There is no doubt that plaintiff's spine showed a listing to the right and the amount of cartilage between certain verte-

brae was decreased by reason of the added pressure. The X-ray specialists insisted upon confining their answers to the narrow scope of their profession and did not branch out into comment or opinion into the medical field. The medical doctors seemed to be guarded in their statements. When it developed that the result of the examination of the X-rays permitted of no definite diagnosis there arose a suggestion that much of the trouble of the plaintiff might be imaginary. Thereupon, inquiry took the form of interrogating the doctors along the line whether or not, if it were an imaginary trouble, it would not be as hurtful as if it were real.

There was some inquiry based upon the fact of physical disability of the plaintiff prior to the collision and aggravation of the pre-existing trouble by the collision.

Upon cross-examination Dr. Judy in stating his findings said:

"There is definite list of spine to right. There was no evidence of bone or joint injury. Diagnosis, an old trauma low back."

The collision happened on February 20, 1932, and the doctor examined the patient on May 26, 1932. It is not probable that he would have characterized the trauma which had occurred in February, 1932, as an old trauma in May, 1932. The plaintiff's testimony as to the nature of her injuries, the subsequent discomforture and distress which she testified she suffered could very properly, by the jury, have been attributed to the collision, but upon the uncertain state of the record it was within its province to determine that her injuries from the collision were of a minor character. There can be no doubt upon this record that inferences favorable to the claim of the plaintiff and against her were to be found. Dr. D. B. Conklin testifying for the defense, said the plaintiff suffered no permanent injury or disability.

Coming to the question of the loss of time and loss of income by reason thereof, we are again confronted with the uncertainty of the character of the proof. First, it was possible for the jury properly to have said that little of the time which the plaintiff lost from her work was made necessary because of injuries developing from the accident and, secondly, the amount of earnings which she lost was not definite and was the subject of considerable conjecture. The possible figures within which the jury could have fixed its verdict covered a wide range.

It is our obligation to support a judgment if it can be done. As we said at the outset, we are not at all satisfied with the amount of this verdict and believe that it could properly have been much larger, but we cannot say that the jury did not have, in the most favorable aspect for the defendant, the basis for the verdict which it returned.

The judgment of the trial court must, therefore, be affirmed.

KUNKLE and BARNES, JJ, concur.